IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SHANTAYE JIMISON, TRASHANDA (GESS) WILLIAMS, MACKENZIE MOORE, VIRGILLYN MOORE, SHARONDA LEE and TYKUILA MOORE, <br>    Plaintiffs, <br><br> v. <br><br> WAL-MART ASSOCIATES, INC., <br> SAM'S WEST, INC. and WALMART INC. <br>    Defendants. | § § § § § § § § § § § § | Civil Action No. _____ <br><br><br> JURY DEMAND |

ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COME Shantaye Jimison, Trashanda (Gess) Williams, Mackenzie Moore, Virgillyn Moore, Sharonda Lee and Tykuila Moore (collectively referred to hereafter as "the Plaintiffs") and file this Original Complaint, and in support of which would respectfully show the Court the following:

## I. STATEMENT OF THE CASE

1. Wal-Mart Associates, Inc. is a retail company. The Plaintiffs bring suit against Wal-Mart Associates, Inc. for claims of racial discrimination and harassment in the workplace and retaliatory termination.

## II. PARTIES

2. Defendant Wal-Mart Associates, Inc. (Wal-Mart) is a foreign corporation doing business in Texas with registered agent as CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

3. Defendant Sam's West, Inc. is a foreign corporation doing business in Texas with registered agent as CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

4. Defendant Walmart Inc. is a foreign corporation doing business in Texas with registered agent as CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

5. Plaintiffs are citizens and residents of Lubbock County, Texas.

### III. VENUE AND JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper in Lubbock County as it is the county in which all or part of the events giving rise to the cause of action occurred.

### IV. STATEMENT OF FACTS

8. Plaintiffs were hired by Wal-Mart.

9. While working for Defendants, the Plaintiffs were the subject of race discrimination, harassment and retaliation as described below.

### V. CAUSES OF ACTION

7. Based upon the events as outlined below, Plaintiffs sue Defendants pursuant to the provisions of 42 U.S.C. § 1981 for race discrimination, harassment and retaliation. Plaintiffs seek recovery for economic losses and compensatory damages in an amount in excess of the jurisdictional limits of this Court. Furthermore, Defendants acted with malice and/or reckless indifference to the rights of Plaintiffs and Plaintiffs are entitled to punitive damages in an amount in excess of the jurisdictional limits of this Court.

8. Plaintiffs assert claims pursuant to 42 U.S.C. § 1981, which ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts. Defendants violated this statute when they discriminated

against and harassed the Plaintiffs on the basis of their race, as well as when they retaliated against them up to and including their termination.

9. Pursuant to 42 U.S.C. § 1981 and § 1988, Plaintiffs seek reasonable attorneys' fees and costs, including reasonable expert fees as well as pre-judgment and post judgment interest as allowed by law.

10. *Disparate treatment*: To succeed on their § 1981 claims, Plaintiffs can show that "(1) they are members of a protected class—African American; (2) Defendants intended to discriminate on the basis of their race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."[5] *Abdallah v. Mesa Air Grp., Inc.,* No. 22-10686, 2023 WL 5274417, at *4 (5th Cir. Aug. 16, 2023). Each Plaintiff in the instant case is a member of a protected class—each is African American. Each Plaintiff has asserted that Defendants, by and through its employees, intended to discriminate against and harass them based on race and each Plaintiff was an employee at the time of the discrimination and harassment, which is a contract protected by the statute.

11. Plaintiffs can show discrimination in two ways: disparate treatment and disparate impact. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Disparate treatment describes "actions that treat [a plaintiff] worse than others based on [his] race, color, religion, sex, or national origin." *Id.* The "simple test" for determining whether disparate treatment has occurred is "whether the evidence shows treatment of a person in a manner which but-for that person's [protected characteristic] would be different." *Abdallah v. Mesa Air Grp., Inc.,* No. 22-10686, 2023 WL 5274417, at *4 (5th Cir. Aug. 16, 2023).(citing *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). Disparate treatment for a Title VII claim "is established whenever a particular outcome would not have happened 'but for' the

Page 3

purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Abdallah* at *5 (citing *Bostock v. Clayton County*, ⸺ U.S. ⸺, 140 S. Ct. 1731, 1739, 207 L.Ed.2d 218 (2020) (citation omitted). Disparate treatment can be shown by comparing one person's experience to that of a person without the protected trait. But it can also be shown if, but for that person's protected trait, the outcome would have been different. Plaintiffs in *Abdallah* alleged that but for their protected classes (race and national origin), the flight would not have been canceled. "That is an allegation of disparate treatment." Abdallah at *5. "The test is whether the outcome would be different but for the protected class: That can be shown by comparing the experience of the plaintiff to what his treatment would have been but for the protected class or by comparing the experience of the plaintiff to another individual without the protected class. If either leads to a different outcome, disparate treatment has occurred." *Abdallah* at *5.

12. Tykuila Moore: Ms. Moore was hired as a stocker at Wal-Mart in Lubbock in approximately 2017. She began working the shift that allowed her to both work and care for her children. She was later involuntarily forced to move to a shift that interfered with her ability to care for her children. She asked repeatedly to move back to her previous hours but was denied. When Ms. Moore began as a stocker, she worked with other stockers that were white or Hispanic, These employees went on to be promoted into management positions. Ms. Moore took, and passed, the test to be a manager. She also trained under another manager but each time she asked the store manager (white) or training manager (Hispanic) about getting promoted, she was brushed off. Ms. Moore and the other African American employees were treated substantially different than the white/Hispanic employees. For example, the white/Hispanic employees were allowed to assist each other and work as a team when stocking. When Ms. Moore tried to do the same with

another African American employee, they were told by the store manager that they were not allowed to assist each other and must work solo. Ms. Moore's supervisor, Mike (white), would follow her around and find ways to criticize her. On one occasion when Ms. Moore was using the restroom, Mike sent in another employee, Valencia, to spy on her. When Ms. Moore came out of the restroom, Mike chastised her. There was a white employee, Paige, who constantly and regularly used the "n" word. Ms. Moore complained to a manager about Paige's constant use of the racial slur and that manager said he would report it to the Store Manager. The next time Ms. Moore raised the issue with the manager, he said he had told the Store Manager about it and shrugged it off, saying Paige didn't use the slur around him. Paige's use of the slur did not abate. There were other managers who heard Paige use the slur and did nothing to stop it. In fact, a co-worker of Ms. Moore's, Erica (white), had been promoted into Human Resources. Erica heard Paige's regular use of the "n" word and did nothing to stop it. Even though the Defendants hired two people (one white, one Hispanic) to collect grocery carts in the parking lot, the Defendant's white and Hispanic managers would force Ms. Moore and two other African American employees to collect grocery carts—a very undesirable job in Texas weather. When Ms. Moore questioned why they weren't sending the two employees who were hired to collect the carts, she was brushed off with excuses such as, "We can never find them." White/Hispanic employees were frequently allowed to leave early. Domingo, Janette, Will and Erica were all allowed to leave early without negative consequences. Janette was allowed to come in early to make up time or do split shifts. Lee (white) left early almost every day. When Ms. Moore asked to leave early, she was denied. On one occasion, Ms. Moore received a call from her daughter's school that her daughter was very sick with a high fever and she needed to come and get her. Ms. Moore let a manager know and left approximately fifteen minutes early. She was then terminated by Defendants, alleging job

abandonment because she had left fifteen minutes early to pick up her sick child.

13. Trashanda Williams: When Ms. Williams began as a stocker, she worked with other stockers that were white or Hispanic. These employees went on to be promoted into management positions. Ms. Williams was as qualified as the white/Hispanic employees for such promotions, but each time she asked the store manager (white) or training manager (Hispanic) about getting promoted, she was brushed off. Ms. Williams and the other African American employees were treated substantially different than the white/Hispanic employees. For example, the white/Hispanic employees were allowed to assist each other and work as a team when stocking. The African American employees were not allowed to assist each other and had to work solo. Even though the Defendants hired two people (one white, one Hispanic) to collect grocery carts in the parking lot, the Defendant's white and Hispanic managers would force Ms. Williams and two other African American employees to collect grocery carts—a very undesirable job in Texas weather. Accommodations to schedules were allowed for employees that were not allowed for the African American employees. White/Hispanic employees were frequently allowed to leave early. Domingo, Janette, Will and Erica were all allowed to leave early without negative consequences. Janette was allowed to come in early to make up time or do split shifts. Lee (white) left early almost every day. African American employees were not allowed the same privileges. The white/Hispanic supervisors would exclude African American employees from group meetings where they gave out daily instructions. The African American employees were forced to stand separately and wait for instructions and/or get the instructions from the white/Hispanic co-workers.

14 Mackenzie Moore: Mr. Moore was hired at the Wal-Mart Supercenter in Lubbock. Mr. Moore noticed almost immediately that the managers were mostly white/Hispanic. He also noticed that the managers treated the African American employees much differently than the

white/Hispanic employees. Discipline was meted out differently according to race. The Defendants had a point system by which employees were given different points based on rule/policy violations. The managers had discretion in assessing points and frequently assessed them differently based on race. For example, if a white/Hispanic employee was late to work, it was tolerated without discipline. If an African American employee was late, they were assessed disciplinary points. A white co-worker spilled something and Mr. Moore asked him to clean it up. The co-worker became physically aggressive and threatened to fight Mr. Moore, calling Mr. Moore a "f%^&*ing nigger." This happened in front of several managers, including Gene (white male). To Mr. Moore's knowledge, no action was taken by Defendants against the co-worker. Mr. Moore was disciplined and written up because a customer called him "nigger." Mr. Moore reported the discrimination and harassment in the workplace to Defendant's managers and to the corporate office. There was no action taken to eliminate the harassment/discrimination. Instead, Mr. Moore was fired in June 2020 in retaliation for his opposition to, and reporting of, harassment and discrimination based on race.

15. Virgillyn Moore: Ms. Moore was hired at the Sam's Club in Lubbock. There was a noticeable difference in the way in which white/Hispanic employees were treated compared to the African American employees. White/Hispanic managers refused to promote experienced African American employees, including Mr. Moore, but would promote less qualified, less experienced white/Hispanic employees. Discipline was meted out differently according to race. The Defendants had a point system by which employees were given different points based on rule/policy violations. The managers had discretion in assessing points and frequently assessed them differently based on race. For example, if a white/Hispanic employee was late to work, it was tolerated without discipline. If an African American employee was late, they were assessed

disciplinary points. The African American employees, including Ms. Moore were given the less desirable shifts and job positions. Moore reported the discrimination and workplace harassment but instead of assisting her, management tore up her complaint in front of others. After that, the discrimination and harassment continued and even increased. Ms. Moore's hours were cut and she was constructively discharged.

16. Sharonda Lee: Ms. Lee was hired at Wal-Mart in Lubbock. She, along with the other African American employees, was given the worst, non-accommodating shifts. The white/Hispanic managers would change her schedule (and other African American employees) without telling them and switch their days off, causing confusion, great inconvenience and even discipline. Janette and Anthony (both Hispanic) would arrive 30 - 45 minutes late to work and receive no discipline. If Ms. Lee or other African American employees were late, they were disciplined. Lee and other African American employees were reprimanded for being on their cell phone in contrast to the white/Hispanic employees who were not disciplined for the same conduct. The employees were racially segregated wherein the white/Hispanic employees were assigned to duties at the front of the store, such as cashiers, and the African American employees were assigned to duties at the back of the store, such as in the meat department. Lee reported discrimination and harassment to her supervisors, however no action was taken to address it. Lee was told she was "too vocal." As a result of the continuing discrimination and harassment, Lee was constructively discharged.

17. Shante Jimison: Ms. Jimison was hired at Wal-Mart in Lubbock. She, along with the other African American employees, was given the worst, non-accommodating shifts. The white/Hispanic managers would change her schedule (and other African American employees) without telling them and switch their days off, causing confusion, great inconvenience and even

discipline. Janette and Anthony (both Hispanic) would arrive 30 - 45 minutes late to work and receive no discipline. If Ms. Jimison or other African American employees were late, they were disciplined. Jimison and other African American employees were reprimanded for conduct for which the white/Hispanic employees were not disciplined. The employees were racially segregated wherein the white/Hispanic employees were assigned to duties at the front of the store, such as cashiers, and the African American employees were assigned to duties at the back of the store, such as in the meat department. Racial slurs were ignored and not addressed in the workplace. Jimison reported discrimination and harassment, however no action was taken to address it and instead, Jimison was fired in retaliation.

18. The Fifth Circuit has "interpreted § 1981 in a broad sense [and] held that firing someone under a completely at-will contract with discriminatory intent is actionable under § 1981." *Abdallah* at *6 (citing *Fadeyi v. Planned Parenthood Ass'n, Inc.*, 160 F.3d 1048, 1049 (5th Cir. 1998). "As we recognized in *Fadeyi*, Congress amended § 1981 at least in part to ensure that "Americans [would] not be harassed, fired or otherwise discriminated against in contracts because of their [protected class]." *Abdallah* at *6. "The legislative history of the amendments to § 1981 reflects the intent of Congress to protect minorities in their employment relationships. 160 F.3d at 1050.

19. Disparate treatment can be shown by comparing one person's experience to that of a person without the protected trait. But it can also be shown if, but for that person's protected trait, the outcome would have been different. Plaintiffs allege that but for their protected classes (race) they would not have been discriminated against and harassed. They would not have been given worse shifts, worse hours, segregated, belittled, threatened, demeaned, disciplined and terminated. As a result, Plaintiffs are entitled to economic damages, compensatory damages, punitive damages,

attorney fees, costs, prejudgment interest and post judgment interest as allowed by law.

20. Plaintiffs pray for a jury trial.

FOR THE REASONS STATED, Plaintiffs pray that this matter be set for jury trial and that upon trial, Plaintiffs recover damages as outlined in excess of the jurisdictional limits of this Court, attorneys' fees, costs, including reasonable expert fees, pre-judgment and post-judgment interest as allowed by law and such further relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/Susan E. Hutchison
Susan E. Hutchison
Texas Bar No. 10354100
Sehservice@FightsforRight.com

S. Rafe Foreman
Texas Bar No. 07255200
Srfservice@FightsforRight.com

HUTCHISON & FOREMAN, PLLC
500 East 4th St., Ste. 100
Fort Worth, Texas 76102
Phone: 817-336-5533
Fax: 817-887-5471

ATTORNEYS FOR PLAINTIFF